1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7

8    TIMOTHY ALGAIER, and
     DEBRA EDDY,                              NO:  13-CV-0380-TOR

9                        Plaintiffs,          ORDER GRANTING IN PART AND
                                              DENYING IN PART DEFENDANTS'
10        v.                                  SECOND MOTION TO DISMISS

11   CMG MORTGAGE, INC., a California
     Corporation doing business in
12   Washington State; BANK OF
     AMERICA NA, a national bank doing
13   business in Washington State;
     NORTHWEST TRUSTEE
14   SERVICES, INC., a trustee doing
     business in Washington State;
15   MORTGAGE ELECTRONIC
     REGISTRATION SYSTEMS INC.,  a
16   corporation doing business in
     Washington State; PACIFIC
17   NORTHWEST TITLE COMPANY, a
     Trustee doing business in Washington
18   state; FIRST AMERICAN TITLE
     COMPANY, successor in interest to
19   Pacific Northwest Title Company, a
     Trustee, doing business in Washington
20   state; DOES 1-100, inclusively and all

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 1

persons unknown claiming any legal or equitable right, title, estate, lien or interest in the property described in the complaint adverse to Plaintiffs' title or any cloud on plaintiffs' title thereto,

Defendants.

BEFORE THE COURT is Defendants Bank of America, N.A., and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 23). This matter was submitted for consideration without oral argument. The Court has reviewed the briefing and the record and files herein, and is fully informed.

BACKGROUND

This case concerns a threatened nonjudicial foreclosure.

FACTS[1]

Plaintiffs purchased property at 4416 N. Simpson Road in Otis Orchards, Washington, on or about July 3, 2006. In 2009, Plaintiffs refinanced the property, a single family dwelling they used as their primary residence, with CMG Mortgage, Inc., a defendant in the instant lawsuit. The property was allegedly the security under a deed of trust, and the loan was evidenced by a promissory note the current

[1] These facts are taken from Plaintiffs' First Amended Complaint, ECF No. 20, and accepted as true for the purposes of the motion to dismiss.

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO REMAND ~ 2

owner of which Plaintiffs claim "is yet a mystery and unknown." Bank of America, N.A. ("BANA") is allegedly the loan servicer, though Plaintiff contests the ownership of the note and disputes all sums that may be alleged to be due under it as well as amounts paid that were allegedly improperly credited.

Plaintiffs made payments due on the loan through December 2011. They claim that they were being "over charged [sic] on the Note and loan and not receiving proper credits for sums paid." They also contend that the notice of default was recorded prematurely and illegally, and that the right to mediation "was not noticed at any time prior to recordation of the [notice of default] in violation of the Wash. Stats."

**Fraud allegations.** On December 5, 2011, Plaintiffs claim Anna Lopez, an agent of Defendant BANA, contacted Plaintiffs offering a novation of the existing promissory note, reducing monthly payments from $1,872 to $1,252. They claim that she told them:

> If you stopped making payments under the Note for 3 consecutive months, they would be "guaranteed" to qualify for a new Note or modified term or novation beneficially altering the current payment to a lower amount under the existing Note. The new conditions would be implemented and terms made known immediately so no default would be declared or foreclosure brought into play.

They claim Lopez further told them on December 12, 2011, to "just stop paying from January, 2012 through March 2012, and you will qualify, guaranteed."

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 3

Plaintiffs state that Lopez told them BANA would treat the December 2011

payment as "confirmation in lieu of any written contract in confirmation of this

new modification plan."

In October 2013, Plaintiffs filed a lawsuit in Spokane County Superior

Court, alleging 1) negligence; 2) fraud and deceit; 3) violation of the Washington

Foreclosure Fairness Act ("FFA"); 4) equitable accounting; 5) breach of contract;

6) unjust enrichment and promissory estoppel; 7) quiet title; 8) declaratory relief;

and 9) injunctive relief in the form of a temporary restraining order ("TRO") and

preliminary injunction.  The superior court entered a TRO on October 9, 2013,

postponing the sale.[2]

In November 2013, Defendants removed the action to federal court, and later

moved to dismiss. The Court granted in part and denied in part Defendants'

motion, dismissing with leave to amend Plaintiffs' claims for negligence,

Foreclosure Fairness Act violations, equitable accounting, breach of contract,

unjust enrichment and quiet title. ECF No. 15 at 30. Only Plaintiff Algaier, timely

---

[2]  A temporary restraining order, by court rule, is only effective for not more than
14 days. Washington Superior Court Civil Rule 65(b). The record does not contain
a copy of the order from the Superior Court.

filed an amended complaint, again alleging all nine of his original claims.[3] In the motion now before the Court, Defendants only move to dismiss Plaintiffs' claims for negligence, violation of the Foreclosure Fairness Act, for an equitable accounting, for breach of contract, and to quiet title.

DISCUSSION

Defendants BANA and MERS move to dismiss Plaintiffs' claims without leave to amend. They argue that (1) Plaintiffs' negligence claim remains defective because they have not alleged facts showing a legal duty; (2) Plaintiffs' FFA claim fails because they fail to allege facts indicating that Defendants have failed to participate in a mediation in good faith and naming MERS in the DOT does not invalidate Plaintiffs' loan obligations; (3) Plaintiffs have not demonstrated facts entitling them to an accounting; (4) Plaintiffs have inadequately plead breach of

_____

[3] Because Timothy Algaier and Debra Eddy are proceeding *pro se*, each may only represent his or her own interests. *Cato v. United States*, 70 F.3d 1103, 1105 n. 1 (9th Cir. 1995) ("[A] non-attorney may appear only in her own behalf."). Accordingly, the Court will not entertain any pleading as being applicable to both Plaintiffs, unless both Plaintiffs sign the pleading. Federal Rule of Civil Procedure 11(a) requires the Court to strike an unsigned pleading, unless the omission is promptly corrected after being called to the party's attention.

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO REMAND ~ 5

1   contract; and (5) Plaintiffs' quiet title claim still fails for lack of tender. ECF No.

2   23.

3       **A. Motion to Dismiss Standard**

4       A motion to dismiss for failure to state a claim tests the legal sufficiency of

5   the plaintiff's claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To

6   withstand dismissal, a complaint must contain "enough facts to state a claim to

7   relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

8   (2007). "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s]"

9   of the elements of a cause of action will not do." *Id.* at 555, 557. "A claim has

10  facial plausibility when the plaintiff pleads factual content that allows the court to

11  draw the reasonable inference that the defendant is liable for the misconduct

12  alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a plaintiff need not

13  establish a probability of success on the merits, he or she must demonstrate "more

14  than a sheer possibility that a defendant has acted unlawfully." *Id.*

15      A complaint must also contain a "short and plain statement of the claim

16  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This

17  standard "does not require detailed factual allegations, but it demands more than an

18  unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at

19  678 (quoting *Twombly*, 550 U.S. at 555). In assessing whether Rule 8(a)(2) has

20  been satisfied, a court must first identify the elements of the plaintiff's claim(s) and

then determine whether those elements could be proven on the facts pled.  The

court should generally draw all reasonable inferences in the plaintiff's favor, *see*

*Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), but it

need not accept "naked assertions devoid of further factual enhancement." *Iqbal*,

556 U.S. at 678 (internal quotations and citation omitted).

In ruling upon a motion to dismiss, a court must accept all factual allegations

in the complaint as true and construe the pleadings in the light most favorable to

the party opposing the motion. *Sprewell v. Golden State Warriors*, 266 F.3d 979,

988 (9th Cir. 2001).  The court may disregard allegations that are contradicted by

matters properly subject to judicial notice or by exhibit.  *Id.*  The court may also

disregard conclusory allegations and arguments which are not supported by

reasonable deductions and inferences.  *Id.*

### 1.  Whether Plaintiffs' Negligence Claim Should Be Dismissed

Defendants argue that Plaintiffs' First Amended Complaint fails—as their

original complaint did—to demonstrate any duty owed by Defendants; as such, the

Plaintiffs' negligence claim should be dismissed. ECF No. 23 at 8.

As the Court stated in its previous Order on Defendants' motion to dismiss

(ECF No. 15), "[t]he economic loss rule applies to hold parties to their contract

remedies when a loss potentially implicates both tort and contract relief" *Alejandre*

*v. Bull*, 159 Wash.2d 674, 681 (2007). "Tort law has traditionally redressed injuries

properly classified as physical harm." *Stuart v. Coldwell Banker Commercial Group, Inc.,* 109 Wash.2d 406, 420 (1987). It "is concerned with the obligations imposed by law rather than by bargain," and carries out a "safety-insurance policy" that requires that products and property that are sold do not "unreasonably endanger the safety and health of the public." *Id.* at 421, 420. Contract law, on the other hand, carries out an "expectation-bargain protection policy" which "provides an appropriate set of rules when an individual bargains for a product of particular quality or for a particular use." *Id.* at 420-421. "Where economic losses occur, recovery is confined to contract 'to ensure that the allocation of risk and the determination of future liability is based on what the parties bargained for in the contract….'" *Alejandre*, 159 Wash.2d at 682-83.

> If the economic loss rule applies, the party will be held to contract remedies regardless of how the plaintiff characterizes the claims. Washington law consistently follows these principles. The key inquiry is the nature of the loss and the manner in which it occurs, i.e., are the losses economic losses with economic losses distinguished from personal injury or injury to other property. If the claimed loss is an economic loss, and no exception applies to the economic loss rule, then the parties will be limited to contractual remedies.

*Alejandre*, 159 Wash.2d at 683-684.

Unlike in their first complaint, Plaintiffs allege more than economic loss; they allege negligent infliction of emotional distress as well. *See* ECF No. 20 at 8 ("knowing the foreseeable effect of such breach of duty, emotional distress and

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 8

damage to credit standing and reputation to plaintiff was likely and in fact was incurred throughout this lender/borrower dispute. Plaintiffs alleged this breached duty has 'caused' financial injury to them AND inflicted physical harm by the foreseeable infliction of emotional distress upon both plaintiffs…. [P]laintiffs were emotionally and physically made ill, sick, upset, and affected medically in their bodies, minds, and emotions.").

The elements of a negligent infliction of emotional distress claim are (1) the defendant engaged in negligent conduct; (2) the plaintiff suffered serious emotional distress; (3) the defendant's negligent conduct was the cause of the plaintiff's serious emotional distress. *See Hegel v. McMahon,* 136 Wash.2d 122, 135 (1988) (plaintiff came upon scene of accident injuring family member as the result of defendants' negligence); *Hunsley v. Girard*, 87 Wash.2d 424, 553 P.2d 1096 (1976). To demonstrate that a plaintiff suffered emotional distress, he or she must show an "objective symptomology" that is susceptible to a medical diagnosis. *Hegel,* 136 Wash.2d at 133.

Here, however, Plaintiffs' allegations of negligent infliction of emotional distress arise out of the alleged breach of contract. They have not shown that the defendants acted negligently outside their allegation of breach of contract. *See Henderson v. GMAC Mortgage Corp.,* 2008 WL 1733265 (W.D. Wash. 2008) aff'd, 347 F. App'x 299 (9th Cir. 2009) (unpublished). Furthermore, emotional

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 9

distress damages are generally not recoverable in breach of contract cases. *See*

*Gaglidari v. Denny's Restaurants, Inc*., 117 Wash. 2d 426, 432 (1991) (holding

that emotional distress damages were not recoverable in breach of employment

contract case). Thus, the economic loss rule still applies. As the Washington

Supreme Court stated:

> In general, whereas tort law protects society's interests in freedom
> from harm, with the goal of restoring the plaintiff to the position he or
> she was in prior to the defendant's harmful conduct, contract law is
> concerned with society's interest in performance of promises, with the
> goal of placing the plaintiff where he or she would be if the defendant
> had performed as promised.
>
> The economic loss rule maintains the "fundamental boundaries of tort
> and contract law." Where economic losses occur, recovery is confined
> to contract "to ensure that the allocation of risk and the determination
> of potential future liability is based on what the parties bargained for
> in the contract.... If tort and contract remedies were allowed to
> overlap, certainty and predictability in allocating risk would decrease
> and impede future business activity." A manufacturer or seller sets
> prices in contemplation of, among other things, potential contractual
> liability. tort liability is expanded to include economic damages,
> parties would be exposed to " 'liability in an indeterminate amount for
> an indeterminate time to an indeterminate class.' " "A bright line
> distinction between the remedies offered in contract and tort with
> respect to economic damages also encourages parties to negotiate
> toward the risk distribution that is desired or customary." In addition,
> the economic loss rule prevents a party to a contract from obtaining
> through a tort claim benefits that were not part of the bargain.

*Alejandre*, 159 Wash. 2d at 681-83 (2007) (internal citations omitted). To allow a

claim for emotional distress arising out of the breach of contract would undermine

contract law and expose contracting parties to indeterminate liability, decreasing

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 10

certainty and predictability, as the Supreme Court noted in *Alejandre*. Though

Plaintiff claims that Defendants have a legal duty under "business custom and

usage and common business practices," ECF No. 20 at 7, such a duty could only be

owed to *Plaintiffs* under the contractual relationship between Plaintiffs and

Defendants.

Plaintiffs also claim negligence per se based on Defendants' alleged

violations of the Washington Consumer Protection Act and Foreclosure Fairness

Act. ECF No. 20 at 8. For the most part, the doctrine of negligence per se was

abolished by the legislature in 1986 with the passing of RCW 5.40.050.  Now, a

violation of a statute is only evidence of negligence. *See Williams v. Leone &*

*Keeble, Inc.*, 170 Wash. App. 696, 719 (2012).  But that advances Plaintiffs' claim

no further, as Plaintiffs must first establish a tort duty, which they have not.

Accordingly, Plaintiffs' negligence claim is dismissed.

2.  <u>Whether the First Amended Complaint's Foreclosure Fairness Act</u>
<u>Claim Should Be Dismissed</u>

Defendants again argue that Plaintiffs' amended Foreclosure Fairness Act

claim fails because the statute relates to borrowers' entitlement to request

mediation prior to foreclosure. ECF No. 23 at 10. The Court agrees.

As the Court noted in its previous order, RCW 61.24.163 relates to the

foreclosure mediation process. Plaintiffs' complaint now contends that "the right to

mediation was not noticed at any time prior to the recordation of the NOD in

violation of the Wash. Stats." ECF No. 20 at 5.  Thus, Plaintiffs have now pleaded

Defendants' failure to "provide documentation required before mediation or

pursuant to the mediator's instructions." RCW 61.24.163(10).  Accordingly,

Plaintiffs' amendment cured the deficiency identified in the Court's prior Order (at

ECF No. 15).

However, Defendants argue there is no dispute that they provided the

required mediation notice.  *See* ECF No. 9, Exhibit E.  As a general rule, a district

court may not consider any material beyond the pleadings in ruling on a Rule

12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

Rule 12(b)(6) expressly provides that when:

> matters outside the pleading are presented to and not excluded by the
> court, the motion *shall* be treated as one for summary judgment and
> disposed of as provided in Rule 56, and all parties shall be given
> reasonable opportunity to present all material made pertinent to such a
> motion by Rule 56.

Fed.R.Civ.P. 12(b)(6) (emphasis added). However, there are two exceptions to the

rule that consideration of extrinsic evidence converts a 12(b)(6) motion to a

summary judgment motion:

> First, a court may consider "material which is properly submitted as
> part of the complaint" on a motion to dismiss without converting the
> motion to dismiss into a motion for summary judgment. If the
> documents are not physically attached to the complaint, they may be
> considered if the documents' "authenticity ... is not contested" and
> "the plaintiff's complaint necessarily relies" on them. Second, under

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 12

Fed.R.Evid. 201, a court may take judicial notice of "matters of public record." We review a district court's decision to take judicial notice for abuse of discretion.

*Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (internal citations omitted). Here, the document in question was attached to Plaintiffs' amended complaint. *See* ECF No. 20-2. The document, noted as "the final step before the foreclosure sale of your home," states that "[y]ou have only 20 DAYS from the recording date of this notice to pursue mediation." See also ECF No. 20-4. These documents clearly states that the time period in which Plaintiffs may pursue mediation. Since the documents were appended to the amended complaint filed by Plaintiffs, their authenticity does not appear to be contested, and there appears to be no dispute that Plaintiffs were afforded notice of their statutory right to mediation. Accordingly, Plaintiffs' claim under the Foreclosure Fairness Act is dismissed.

Defendants also argue that naming MERS in the deed of trust does not invalidate Plaintiffs' loan obligations and that Plaintiffs' citation to *Bain v. Metropolitan Mortgage Group, Inc.*, 175 Wash.2d 83 (2012), does not relate to Plaintiffs' claim under the FFA. ECF No. 23 at 11. Having dispensed with Plaintiff's FFA claim above, the Court need not consider this second argument.

///

///

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO REMAND ~ 13

3.  <u>Whether Plaintiffs Are Entitled to an Equitable Accounting</u>

Defendants maintain that Plaintiffs have failed to allege in their amended complaint entitlement to an accounting, as they did in the original complaint. ECF No. 23 at 15.  The Court agrees.

As the Court noted in its order on Defendants' previous motion to dismiss, actions for partnership accounting are now covered under statute in Washington; actions for common-law accounting arise under case law. The requisites for an accounting action are set forth in *Corbin v. Madison*, 12 Wash. App. 318, 327 (1974), quoting with approval language from *Seattle Nat'l Bank v. School Dist. 40*, 20 Wash. 368 (1898):

> In general, a complaint for an accounting must show by specific averments that there is a fiduciary relation existing between the parties, or that the account is so complicated that it cannot conveniently be taken in an action at law. And it must allege that the plaintiff has demanded an accounting from the defendant, and the latter's refusal to render it, in order to state a cause of action.

*Corbin*, 12 Wash. App. at 327 (quoting *Seattle Nat'l Bank*, 20 Wash. 368).

A fiduciary relationship arises as a matter of law between an attorney and client, or a doctor and patient, for example. *Liebergesell v. Evans*, 93 Wash.2d 881, 890 (1980).  However, a fiduciary relationship can also arise in fact regardless of the legal relationship between the parties. *Id*. In some circumstances a fiduciary relationship which allows an individual to relax his guard and repose his trust in

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 14

another may develop. *Id*. at 889.  Such a fiduciary relationship is one in which one party "occupies such a relation to the other party as to justify the latter in expecting that his interests will be cared for. . . ." *Id*. at 889-90 (quoting Restatement Contracts § 472(1)(c)) (sufficient evidence of fiduciary relationship to overcome summary judgment where businessman induced a widowed school teacher to lend him money at 20 percent interest rate, even though he knew that rate was illegal). "'The facts and circumstances must indicate that the one reposing the trust has foundation for his belief that the one giving advice or presenting arguments is acting not in his own behalf, but in the interests of the other party.'" *Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc.*, 86 Wash. App. 732, 742 (1997) (quoting *Burwell v. South Carolina Nat'l Bank,* 340 S.E.2d 786, 790 (1986)). In other words, the plaintiff must show some dependency on his or her part and some undertaking by the defendant to advise, counsel, and protect the weaker party. *Id*. In *Goodyear*, the court found that counterclaim plaintiff had not created an issue of fact sufficient to avoid summary judgment where, though tire dealer was vulnerable, tire manufacturer was clearly interested in promoting itself as demonstrated by its reservation of right to compete. *Id*. at 743 ("the existence of conflicting profit incentives between a manufacturer and dealer is at odds with a fiduciary relationship").

Plaintiffs' complaint does not allege any relationship between BANA and/or MERS and Plaintiffs that could give rise to a fiduciary relationship. Plaintiffs contend in their amended complaint that "Plaintiff who are contracted in a business relationship with BOA and CMG concerning a loan that must be <u>accurately maintained in the books and records</u> of the lender and loan servicer under common usage in the banking and secured transactions industry have a right to a fair and honest report of the total sums due, payable, paid and credited under the referenced Note." ECF No. 20 at 11 (emphasis in original). But business relationships do not inherently give rise to accounting rights. Plaintiffs have again not sufficiently alleged facts giving rise to a finding of a fiduciary relationship between the parties. Nor does the complaint indicate that the mortgage at issue is anything other than the typical mortgage, warranting an accounting because of complexity. Nor have Plaintiffs stated that they demanded an accounting from Defendants, as required. *See Corbin*, 12 Wash. App. at 327. Accordingly, Plaintiffs' claim for an equitable accounting in its First Amended Complaint has the same defects as the claim in the original complaint and again must be dismissed.

    4. <u>Whether the First Amended Complaint's Breach of Contract Claim Should Be Dismissed</u>

Defendants argue that Plaintiffs' amended complaint fails to cure the deficiencies identified in Court's previous order because Plaintiffs have not

demonstrated the existence of a valid written contract that survives the statute of frauds. ECF No. 23 at 16. As the Court noted in its previous order, the statute of frauds requires that agreements relating to an interest in real property, including mortgages, be in writing and signed by the party to be charged. RCW § 64.04.010. Plaintiffs' amended complaint alleges that Defendants breached the "novated agreement" modifying the original note, entered into in December 2011 to reduce the monthly payments by $620. ECF No. 20 at 12. But all factual allegations indicate that this agreement was verbal. *See, e.g., id.* at 5 ("the reduced sum was **stated** by Lopez to be $1252. The benefit to plaintiffs was … $620"; "Lopez stated that the December 2011 payment would be treated by BOA as a confirmation **in lieu of any written contract** in confirmation of this new modification plan." (emphasis added)). Thus, Plaintiffs' amended complaint, like the original complaint, fails to state a cause of action for breach of contract (the novated agreement) that survives the statute of frauds.

Defendants also argued in their previous motion to dismiss that Plaintiffs failed to allege facts demonstrating the elements of a breach claim because they do not state the relevant provisions or describe any breach or damages. ECF No. 8 at 14. The Court never directly addressed this argument concerning the original loan agreement in its previous order. *See* ECF No. 15. Generally, a plaintiff in a contract action must prove (1) a valid contract between the parties, (2) breach, and

(3) resulting damage. *Lehrer v. State Dep't of Soc. & Health Servs.,* 101 Wash.

App. 509, 516 (2000).  Plaintiffs' Second Amended Complaint states that:

> Plaintiff'[s] original loan agreement set forth dates by which monthly
> principal and interest payments were due, and when late fees and
> other charges could be assessed. Other terms and conditions exist all
> stated in writing in the promissory Note and Deed of Trust which
> make up the agreement between the contracting parties….
> Alternatively plead, if the original note and deed of trust were
> properly assigned in 2009 to Defendant BOA, Defendant BOA
> breached the note and deed of trust that Plaintiff signed on or about
> July 24, 2009. The terms of the note required payments made by
> Plaintiff to be applied properly to the note. Any variance from the
> Note's terms and conditions and those implied conditions as imposed
> by the law contracts of this state constitute a material breach of the
> contract with remedies available as prayed for hereinafter.

ECF No. 20 at 12.  Defendants argue that Plaintiffs allegations are the same as

those raised by Plaintiffs in the original complaint and should again be dismissed.

Plaintiffs' amended breach of contract claim (paragraphs 83-87, ECF No. 20)

incorporates all prior paragraphs of the amended complaint.  Id. at ¶ 83.  Plaintiffs'

new allegations include:

> Plaintiff . . . disputes all sums that may be alleged to be due under said
> alleged obligation and that amounts paid or that should have been
> credited properly were not thus creating this good faith dispute over
> alleged arrears.

> Plaintiffs made each payment due on the refinance contractual loan to
> and through the month of December, 2011. . . .

> Plaintiffs allege that credits against the Note are existent in sums
> approximating $10,000 or more and have not been accounted for by
> the beneficiary or loan servicer who are defendants, thus, rendering
> that the under the Note there is NO default. The allegations of wrong

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 18

accounting are made against all defendants and most recently Bank of America [BOA, hereafter]. CMG was the original lender who received money payment paid at the commencement of the Note. The Note was originally $274,039. According to the Closing Documents there was to be paid back to plaintiff the sum of $14,987.00 in credits at closing based on calculated over charges that CMG was to repay. This was never done. . . . As such, credits and set offs being alleged in the sum of $14,987 were and are due. Have the sums been properly accounted for and either returned to plaintiffs or properly credited, the default would not have been claimed or declared and no foreclosure would have been lawfully commenced, yet such did occur and foreclosure efforts commenced. Thus, the sums claimed owed by any of the defendants are incorrect; this is sufficient to render the default to be improperly assessed and any notice of default or notice of intent to foreclose under Wash. Stats. to be premature and unenforceable.

ECF No. 20 at ¶¶ 5.2-8.1 (emphasis deleted). Here, Plaintiffs have now pleaded factual content—i.e., specific information about the terms of the contract and the resulting action that breached that contract—for the court to draw a reasonable inference that the defendant could be liable for the misconduct alleged. Accordingly, Plaintiffs' claim of breach of the original loan agreement survives the dismissal motion.

     5.  <u>Whether the First Amended Complaint's Claim for Quiet Title Should Be Dismissed</u>

Defendants argue that Plaintiffs' amended complaint again fails to allege that they tendered the amount due on the loan, and, as such, their quiet title action fails. ECF No. 23 at 16-17. The Court agrees. A plaintiff may not maintain an action to quiet title where he at no time offered to pay the balance of the purchase

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO REMAND ~ 19

1   price to satisfy the mortgage debts on land. *See Littlejohn v. Miller*, 5 Wash. 399,

2   404 (1892) ("However this may be, their indebtedness for the said portion of the

3   purchase price was concluded by this judgment, and they are in no position to

4   question the validity thereof; and they not having at any time offered to pay the

5   balance of said purchase price, and to satisfy said mortgage debts, the judgment

6   rendered in their favor in the court below must be reversed, and the cause is

7   remanded with instructions to the lower court to dismiss it."). Here, Plaintiffs'

8   complaint only alleges that they made payments and then stopped making

9   payments. There is no suggestion that Plaintiffs have paid off their mortgage or

10  offered to do so. Accordingly, their action for quiet title is dismissed.

11          6.    Leave to Amend

12          The standard for granting leave to amend is generous. *See* Fed. R. Civ. P.

13  15(a)(2) ("The court should freely give leave when justice so requires.").

14  "Dismissal of a pro se complaint without leave to amend is proper only if it is

15  absolutely clear that the deficiencies of the complaint could not be cured by

16  amendment." *Schucker v. Rockwood,* 846 F.2d 1202, 1203–04 (9th Cir. 1988)

17  (internal quotation marks and citations omitted). The court considers five factors in

18  assessing the propriety of leave to amend: bad faith, undue delay, prejudice to the

19  opposing party, futility of amendment, and whether the plaintiff has previously

20

1  amended the complaint. *United States v. Corinthian Colleges,* 655 F.3d 984, 995

2  (9th Cir. 2011).

3      While the Court again finds no indication of bad faith, undue delay, or

4  significant prejudice to the opposing party, this is Plaintiffs' second attempt at

5  drafting a complaint sufficient to meet the pleading standards. Accordingly,

6  granting leave to amend again would be futile; if Plaintiffs, having been informed

7  what claims are deficient, cannot remedy those deficiencies now, it is futile to give

8  them another chance when their claims have failed for the same reasons.

9  **B. Dismissal of Does 1-100**

10      The Court previously allowed Plaintiffs to amend their complaint.  ECF No.

11  15.  However, the Court cautioned Plaintiffs that:

12      The use of "Doe" Defendants is not favored in the Ninth Circuit. *See
       Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). For Plaintiffs

13      to properly name "John Doe" Defendants, they must provide all of the
       information they would normally provide if they already knew each of

14      the defendants' names. Plaintiff should identify "John Does" by their
       function, their actions, the dates these actions occurred and most

15      importantly, a short and plain statement of the law or legal theory and
       facts supporting each claim against each defendant which would

16      entitle Plaintiffs to relief.

17  *Id*. at 28.  This, Plaintiffs have wholly failed to do.  See ECF No. 20 at ¶ 4.

18  Accordingly, Does 1-100 are hereby dismissed.

19  ///

20  ///

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 21

**C. Dismissal for Failure to Serve**

The Court previously ordered the Plaintiffs to show cause why the case against each Defendant who has not been served.  ECF No. 19 at 3.  Specifically, on April 25, 2014, the Court ordered:

> Fed. Rule Civ. P. 4(m) requires Plaintiffs to serve each Defendant within 120 days after the complaint is filed or suffer dismissal. Accordingly, Plaintiffs shall show cause, on or before **May 7, 2014**, why this case should not be dismissed against each of the Defendants that have not appeared and for which proof of service has not been filed.

*Id*.  On May 7, 2014, Plaintiff Algaier only responded to the Court's Order to Show Cause, by certifying (neither under oath or by proper declaration) that three Defendants; CMG Mortgage, Inc., Pacific Northwest Title Company, and First American Title Company, were served in that he caused the Notice of Summons and Notice of Verified Complaint to be mailed by United States Postal Service. ECF No. 21.

Only a person at least 18 years old, not a party, may serve a summons and complaint by one of the methods set forth in Federal Rule of Civil Procedure 4. Merely mailing a summons and complaint is wholly inadequate service.

Accordingly, Defendants CMG Mortgage, Inc., Pacific Northwest Title Company, and First American Title Company are dismissed from this action without prejudice.

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS'
MOTION TO REMAND ~ 22

**IT IS HEREBY ORDERED:**

1. Defendants' Motion to Dismiss (ECF No. 23) is **GRANTED** in part and **DENIED** in part.

   a. Plaintiffs' negligence claims are **DISMISSED**.

   b. Plaintiffs' Foreclosure Fairness Act claim is **DISMISSED.**

   c. Plaintiffs' claim for an accounting is **DISMISSED**.

   d. Plaintiffs' breach of contract claim concerning the "novated agreement" is **DISMISSED**, yet the breach of contract claim concerning the original loan agreement survives.

   e. Plaintiffs' quiet title cause of action is **DISMISSED**.

2. Plaintiff Debra Eddy is granted leave to affirm the First Amended Complaint for which she neglected to personally sign.  Unless Debra Eddy files a personally signed affirmation of the First Amended Complaint (ECF No. 20) **on or before August 25, 2014**, said complaint will be stricken as it pertains to her and she will be terminated from this case.

3. Does 1-100 are dismissed from this action and the Clerk of Court shall terminate them from the caption and case.

4. Defendants CMG Mortgage, Inc., Pacific Northwest Title Company, and First American Title Company are dismissed from this action without

ORDER RE DEFENDANTS' MOTION TO DISMISS AND PLAINTIFFS' MOTION TO REMAND ~ 23

1    prejudice, and the Clerk of Court shall terminate them from the caption

2    and case.

3        The District Court Executive is hereby directed to enter this Order and

4    provide copies to the parties.

5        **DATED** August 13, 2014.



7                    THOMAS O. RICE
                United States District Judge