1

2

3

4

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

5

6  TIMOTHY ALGAIER and DEBRA
   EDDY,

7                              NO:  2:13-CV-0380-TOR

                  Plaintiffs,

8                              ORDER RE: DEFENDANTS'
         v.                    MOTION FOR SUMMARY
                               JUDGMENT

9

   BANK OF AMERICA, N.A., a
10 national bank doing business in
   Washington State, and MORTGAGE
11 ELECTRONIC REGISTRATION
   SYSTEMS, INC., also known as
12 MERS,

13                 Defendants.

14

        BEFORE THE COURT are the following motions: (1) Defendants' Motion

15

   for Summary Judgment (ECF No. 51); (2) Plaintiffs' Motion to Strike (ECF No.

16

   58)[1]; (3) Defendants' Motion to Strike (ECF No. 64); and (4) Defendant's Motion

17

   to Expedite (ECF No. 66).  These matters were submitted for consideration without

18

19

20 _____

   [1] Plaintiffs' motion is subsumed within their response briefing.  *See* ECF No. 58.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 1

oral argument.  The Court—having reviewed the briefing, the record, and files

therein—is fully informed.

## BACKGROUND

This case concerns a threatened nonjudicial foreclosure.  Plaintiffs Timothy

Algaier and Debra Eddy, proceeding *pro se*, initiated this action in Spokane

County Superior Court on October 9, 2013, which action Defendants timely

removed to this Court.  ECF No. 1.  Plaintiffs' three remaining causes of action—

after several of their claims have suffered dismissal by this Court—are for fraud,

promissory estoppel, and breach of contract.  *See* ECF Nos. 20, 26.

In the instant motion for summary judgment, Defendants move for summary

judgment on these three remaining claims.  ECF No. 51.

The parties have also filed motions to strike.  Plaintiffs move to strike the

declarations of Ms. Davidson and Mr. Varallo filed in support of Defendants'

motion for summary judgment, asserting that they are not admissible under Federal

Rule of Civil Procedure 56.  ECF No. 58.  Defendants also move to strike, pursuant

to Federal Rule of Civil Procedure 37, five exhibits filed by Plaintiffs in support of

their opposition to summary judgment.  ECF No. 64.  Defendants assert these

documents were not produced in discovery and their admission would be highly

prejudicial to Defendants.  *Id.*

///

**FACTS[2]**

In 2006, Plaintiffs Timothy Algaier and Debra Eddy purchased a property located at 4415 North Simpson Road in Otis Orchards, Washington ("Property"). ECF No. 20 at 2.

On or about July 24, 2009, Mr. Algaier obtained a $274,039 FHA refinance loan ("Loan") from CMG Mortgage, Inc. ECF No. 52 at 3. The terms of the Loan, set forth in the Adjustable Rate Note ("Note"), directed Mr. Algaier to make monthly payments in the amount of $1,429.52 on the first day of each month, beginning on September 1, 2009. ECF Nos. 52 at 3; 52-1 at 2. If a payment was fifteen days late, Mr. Algaier could incur a late charge. ECF Nos. 52 at 3; 52-1 at 3. Failure to pay any monthly payment in full could result in default. ECF No. 52-

---

[2] The following are the undisputed material facts unless otherwise noted. For purposes of summary judgment, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2); *see also* L.R. 56.1(d) ("[T]he Court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by the record set forth [in the non-moving party's opposing statement of facts]").

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 3

1 at 3.  Payments were to be made to Defendant Bank of America ("BANA").[3]

ECF Nos. 52 at 4; 52-1 at 5.

The Loan was secured to the Property by a Deed of Trust ("DOT"),

executed on July 24, 2009 by both Mr. Algaier and Ms. Eddy.  ECF Nos. 52 at 4;

52-1 at 11-23.  The DOT identifies Mr. Algaier as the borrower, Pacific Northwest

Title Company as the trustee, and MERS as the beneficiary, "solely as nominee for

Lender [CMG] and Lender's successors and assigns."[4]  ECF Nos. 52 at 4; 52-1 at

11.  In addition to monthly loan payments, evidenced by the Note, Mr. Algaier was

required to submit payments for taxes, insurance, and other relevant charges as

---

[3] The original Note has been in the possession of BANA or its subsidiary,

ReconTrust Company, N.A., at all times since September 8, 2009.  ECF Nos. 52 at

4; 52-1 at 7-9.

[4] BAC Home Loans Servicing, LP, ("BAC") was the initial servicer of the Loan,

ECF No. 52 at 5; however, on or about July 1, 2011, BAC merged with and into

BANA, ECF Nos. 52 at 5; 52-1 at 41-43.  BANA notified Mr. Algaier of the

servicing transfer on July 1, 2011.  ECF Nos. 52 at 5; 52-1 at 45-48.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

detailed in the DOT.[5]  ECF Nos. 52 at 4; 52-1 at 12.  The DOT provided for the following order of payments:

> First, to the mortgage insurance premium to be paid by Lender to the Secretary [of HUD] or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium; Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood, and other hazard insurance premiums, as required; Third, to interest due under the Note; Fourth, to amortization of the principal of the Note; and Fifth, to late charges due under the Note.

ECF Nos. 52-1 at 13.

Prior to the Loan closing date, Plaintiffs were provided a HUD-1 Settlement Statement and Addendum, setting forth the financial details of the Loan.[6]  ECF Nos. 52 at 4; 52-1 at 25-28.  Mr. Algaier executed the Addendum on July 27, 2009. ECF No. 52-1 at 28.

---

[5] On December 22, 2009, a Loan Modification Agreement was recorded, which modified the Security Instrument as follows: "Section 5(A) of Adjustable Rate Rider to be corrected from First day of August, 2014, to First day of October, 2014."  ECF Nos. 52 at 5; 52-1 at 31-39.

[6] Plaintiffs contend, without citation to any evidence, that they were due $14,987 in credits pursuant to the closing documents.  ECF No. 20 at 3.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 5

In the fall of 2011, Mr. Algaier defaulted on the Loan by failing to make the September and October payments.  ECF Nos. 52 at 5; 52-1 at 55.[7]  On November 7, 2011, BANA issued a Notice of Intent to Accelerate, notifying Mr. Algaier that the Loan was in default, listing the charges due, advising Mr. Algaier of his right to cure the default, and informing Mr. Algaier of the different program options available if he is unable to cure the default.  ECF Nos. 52 at 6; 52-1 at 64-65.

Mr. Algaier subsequently made payments in November and December 2011, ECF Nos. 52 at 5; however, these payments were unable to cure the default. Specifically, on or about November 28, 2011, BANA sent Mr. Algaier a letter acknowledging receipt of $1,911.97 but informing Mr. Algaier that $4,129.26 was still due in order to bring the Loan up to date.  ECF Nos. 52 at 6; 52-1 at 67.   On or about December 30, 2011, BANA sent Mr. Algaier a second letter acknowledging receipt of $1,912.00 but informing Mr. Algaier that $3,896.98 was

---

[7] Plaintiffs contend that they were current on the Loan through December 2011. ECF No. 59 at 7; *see* ECF No. 20 at 3 ("Plaintiffs made each payment due on the refinance contractual loan to and through the month of December, 2011."). However, their loan history record demonstrates that Plaintiffs did not make any regular payments between their payment in August 2011 and their next payment in November 2011.  ECF No. 52-1 at 55.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 6

still due in order to bring the Loan up to date.  ECF Nos. 52 at 6; 52-1 at 68.

Following December 30, 2011, Mr. Algaier did not make any additional payments.

ECF Nos. 52 at 5; 52-1 at 55-58.

Around this time, on December 5, 2011, Plaintiffs spoke to a BANA

representative about the Loan.  The parties provide two very different versions of

the conversation that took place and the events that followed.

Plaintiffs present the following version of events.  Plaintiffs contend that a

BANA representative told them that if they missed three monthly loan payments,

they would automatically qualify for an "alternate lending program," which would

offer a reduction in monthly payments and reduced interest rates.  ECF Nos. 58 at

3; 60 at 2-3.  Although Plaintiffs provide no documentation related to this modified

loan agreement, Plaintiffs allegedly memorialized the conversation in a written

letter, which letter they claim to have sent to BANA on December 6, 2011.  ECF

Nos. 58 at 13; 60 at 3; *see* ECF No. 59 at 11.  BANA maintains it never received

this letter and was never given a copy of this letter during discovery.  The letter

states that a BANA representative (1) "guaranteed" that a modified loan agreement

would go into effect after Plaintiffs stopped making payments for three months, (2)

"guaranteed" that no default or foreclosure would occur during this three-month

period, and (3) informed Plaintiff that "Bank of America does not put these details

of novation agreements in writing."  ECF No. 59 at 11.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 7

The precise terms of the novated agreement were discussed in a subsequent letter Plaintiffs allegedly sent to BANA on December 23, 2011.  In that letter, Plaintiffs contend they again talked to Ms. Lopez who indicated that their new monthly payments would be reduced to $1,252.00.  ECF No. 59 at 13.  This letter indicates that a novated "agreement in writing was promised to be sent to [Plaintiffs] by the bank showing this agreement according to Ms. Lopez." *Id.* at 13.  One month later, on January 28, 2012, Plaintiffs purportedly sent a third letter memorializing an alleged conversation with BANA's Loan Retention Department, wherein a BANA representative confirmed that the novated agreement had been finalized, the documents would be delivered shortly, and that Mr. Algaier should stop paying on the Note as originally instructed.[8]  *Id.* at 15.

---

[8] Plaintiffs allegedly sent a fourth letter, dated April 3, 2012, memorializing another alleged conversation with a BANA representative discussing BANA's failure to send the novated agreement and Plaintiffs' decision to forego payments despite the lack of a written confirmation.  ECF No. 59 at 17.  Plaintiffs' final letter, dated April 21, 2012, describes an alleged conversation Plaintiffs had with a BANA representative wherein BANA denied that any loan modification was offered.  *Id.* at 19.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 8

1    Defendants, on the other hand, provide a very different account of the

2    December 5, 2011, conversation and the events that followed.  According to

3    Defendants, Mr. Algaier called the collections department to inquire about loss

4    mitigation options.  ECF Nos. 52 at 6; 52-1 at 70-73.  On or about December 16,

5    2011, BANA's Loan Modification Team sent Mr. Algaier a letter acknowledging

6    his recent call to discuss his home loan needs and enclosed application materials to

7    apply for payment assistance under the FHA programs.  ECF Nos. 52 at 6; 52-1 at

8    75-83.  Mr. Algaier submitted an executed application, dated March 21, 2012,

9    detailing his income and expenses for his household and explaining that he was

10    requesting review for a loan modification due to medical costs and a new, less

11    lucrative job.  ECF Nos. 52 at 6; 52-1 at 85-87.

12    On or about April 12, 2012,[9] Mr. Algaier was offered a Special Forbearance

13    Plan on his Loan, which Plan "provides for a temporary payment plan designed to

14    give [a borrower] additional time and flexibility to meet [his] obligations, but also

15    allow[s] [the borrower] to bring [his] loan up to date at the end of the plan."  ECF

16

17

18

19    [9] Around this time, MERS assigned its interest in the DOT to BANA, which

20    assignment was recorded on April 8, 2012.  ECF Nos. 52 at 8; 52-1 at 113.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

Nos. 52 at 6-7; 52-1 at 89.[10]    Pursuant to the Agreement, Mr. Algaier was required to make monthly payments of $2,767.86 starting on June 1, 2012, and continuing to May 1, 2013.  ECF Nos. 52 at 6; 52-1 at 98.  Mr. Algaier executed and returned the Special Forbearance Agreement on or about April 20, 2012, and a BANA representative executed the Agreement on or about May 31, 2012.[11]  ECF Nos. 52 at 6-7; 52-1 at 102.  Mr. Algaier did not make any payments under the Special Forbearance Agreement.  ECF Nos. 52 at 7; 52-1 at 55-56.

On or about July 9, 2012, following Plaintiffs failure to make any payments, BANA issued a notice to Mr. Algaier prompting him to respond within thirty days and advising him to contact a housing counselor or attorney as soon as possible. ECF Nos. 52 at 7; 52-1 at 104-107.

From August 2012 to February 2013, Plaintiffs had several phone conversations with a BANA representative regarding their failure to make

---

[10] BANA maintains that it never offered Mr. Algaier a loan modification "as the materials he submitted indicated that he had sufficient income to repay the loan," and was merely experiencing "a short term financial issue."  ECF No. 52 at 7.

[11] Mr. Algaier disputes ever signing the Special Forbearance Agreement and accuses BANA of forging his signature "to cover up their earlier 90 day scam." ECF No. 58 at 12.

payments under the Special Forbearance Agreement.  The BANA representative made notations regarding these conversations.  *See* ECF No. 52-1 at 109-111.[12] Specifically, on August 27, 2012, a BANA representative spoke with Mr. Algaier and Ms. Eddy.  According to the notes, Mr. Eddy said, in part, that she "cannt [sic] make pay" and that the Property was "not worth it."  ECF Nos. 52 at 7; 52-1 at 109.  On September 18, 2012, the same BANA representative spoke with Mr. Algaier, and Mr. Algaier said that he cannot afford payments.  ECF No. 52 at 7-8; 52-1 at 110.  On February 25, 2013, the representative spoke with Mr. Algaier one more time, during which conversation Mr. Algaier stated that the payments were "too high" and the property was "not worth it."  ECF Nos. 52 at 8; 52-1 at 111.

On April 23, 2013, BANA appointed Northwest Trustee Services, Inc., as the successor trustee under the DOT.  ECF Nos. 52 at 8; 52-1 at 115.  On May 30, 2013, Northwest Trustee Services, Inc., issued a Notice of Trustee's Sale, scheduling a sale of the Property for October 11, 2013.  ECF Nos. 52 at 8; 52-1 at 117-21.

---

[12] While these records would appear to be admissible under the business records exception to the hearsay rule, Fed. R. Evid. 803(6), and the statements attributed to the Plaintiff's would be admissions of party opponents, Fed. R. Evid. 801(d)(2), the Court does not rest its ruling on the truth of these statements.

On October 9, 2013, Plaintiffs filed suit in Spokane County Superior Court, alleging nine causes of action against Defendants and seeking an order enjoining sale of the Property.  ECF No. 1-1 at 2-27.  The Superior Court temporarily enjoined the sale of the Property.   ECF No. 1-1 at 29.  To date, no foreclosure sale has taken place.  ECF No. 52 at 8.

On November 4, 2013, Defendants removed the action to this Court, ECF No. 1, and—as a result of two orders dismissing several of Plaintiffs' claims, ECF Nos. 15, 26—only three causes of action remain within Plaintiffs' First Amended Complaint: fraud, promissory estoppel, and breach of contract.

## DISCUSSION

### A. Motions to Strike

#### 1. Plaintiffs' Motion to Strike Declaration

Plaintiffs move to strike the declarations of BANA representative Melissa Davidson and defense counsel Christopher Varallo.  ECF No. 58.

Pursuant to Federal Rule of Civil Procedure 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4); *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1063 (9th Cir. 2012) ("Declarations must be made with personal knowledge; declarations not

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

based on personal knowledge are inadmissible and cannot raise a genuine issue of material fact."); *Shakur v. Schriro*, 514 F.3d 878, 890 (9th Cir. 2008); *cf. Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc.*, 944 F.2d 1525, 1529 (9th Cir. 1991) (holding that a declaration, not based on personal knowledge but on information and belief, does not satisfy the requirements of Rule 56).

### a.  Ms. Davidson

Plaintiffs first contend that the declaration of Ms. Davidson is inadmissible under Rule 56.  ECF No. 58.  Specifically, Plaintiffs fault Ms. Davidson for basing her declaration on information and belief, not personal knowledge, because the first paragraph of her declaration states, "The information contained in this declaration is true and correct to the best of my knowledge, information and belief . . . ."  ECF No. 58 at 9 (citing ECF No. 52 at 2).  Plaintiffs assert that it is unclear what parts of Ms. Davidson's declaration are based on information and belief and that no part of her declaration should be admitted.  *Id.* at 10, 13.  Plaintiffs also fault Ms. Davidson for "parroting inadmissible hearsay of other 3rd party bank 'representatives.'"  *Id.* at 9.

This Court finds Ms. Davidson's declaration is admissible.

First, Ms. Davidson has the requisite personal knowledge.  Ms. Davidson is employed by BANA as an Assistant Vice President and Operations Team Manager.  ECF No. 52 at 2.  From her general job duties, she is familiar with "the

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 13

ordinary and customary method and manner of the preparation and maintenance of

BANA's business records." *Id.* Ms. Davidson represents that she has reviewed

Plaintiffs' loan file and bases her declaration on this review. *Id.* Ms. Davidson's

declaration proceeds to discuss the ordinary course of business in regards to

BANA's role as a loan servicer and specifically addresses the records related to

Plaintiffs' loan, which records are attached to her declaration. Although Plaintiffs

assert that her declaration is based on "information and belief," she represents that

her declaration is based on her review of Plaintiffs' loan files. *Id.* ("I have

reviewed the business records of BANA relating to the loan(s) described below,

and I am able to make this declaration based on my review."). Contrary to

Plaintiffs' assertions, Ms. Davidson's review of the records establishes personal

knowledge—she need not be the representative who spoke with Plaintiffs and took

notes of the conversations, the employee who electronically stored all the loan

documents, nor the employee who actually received Plaintiffs' loan payments and

credited the account in order to speak to their authenticity and contents.

Second, the specific business records referenced by Ms. Davidson, although

hearsay, fall under an exception to the general rule against hearsay. Federal Rule

of Evidence 803(6) exempts records of a regularly conducted activity from the rule

against hearsay so long as

> (A) the record was made at or near the time by . . . someone with
> knowledge; (B) the record was kept in the course of a regularly

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 14

conducted activity of a business . . . ; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . . ; and (E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). Plaintiffs specifically object to the portions of Ms. Davidson's declaration discussing the Note and DOT. ECF No. 58 at 10, 11. However, because these loan documents referenced in Ms. Davidson's declaration clearly meet the requirements of the business records exception, they do not run afoul of the hearsay rule.

Finally, although Plaintiffs may dispute some of the statements made in Ms. Davidson's declaration as inconsistent with Plaintiffs' First Amended Complaint, ECF No. 58 at 10-12, this is not grounds for finding the declaration inadmissible.

Accordingly, Plaintiffs' motion to strike Ms. Davidson's declaration is **DENIED**.

### b. Mr. Varallo

Plaintiffs also move to strike the declaration of Mr. Varallo, asserting that he lacks personal knowledge. *Id.* at 8. Plaintiffs' motion, however, fails to explain why Mr. Varallo lacks personal knowledge of the facts made within his declaration.

This Court finds Mr. Varallo's declaration is admissible. Mr. Varallo is the attorney for Defendants. His declaration incorporates deposition testimony and

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 15

1    discovery documents, including interrogatories, requests for production, and

2    requests for admissions—items of which he has personal knowledge.  ECF No. 53.

3    According to local rule, "[t]he initiating party shall have the responsibility for

4    maintaining discovery material and making it available as may be required during

5    [the] proceedings."  LR 26.1.  Accordingly, Plaintiffs' motion to strike the

6    declaration of Mr. Varallo is **DENIED**.

7            **2.  Defendants' Motion to Strike Exhibits**

8            Defendants move to strike Exhibits 1 through 5 of Plaintiffs' Separate

9    Statement of Disputed Material Facts.  ECF No. 64.  The exhibits are letters

10   purportedly drafted and sent by Plaintiffs to BANA, each mailed one business day

11   after a conversation with a BANA representative.  ECF No. 59 at 11, 13, 15, 17,

12   19.  These five letters—spanning from December 2011 to April 2012—allegedly

13   memorialize conversations between Plaintiffs and agents of BANA regarding

14   Plaintiffs' eligibility for a loan modification.  *Id.*  Defendants assert that Plaintiffs

15   failed to produce these letters during the discovery process, either in initial

16   disclosures or upon Plaintiffs' duty to supplement.  ECF No. 64.  Because

17   Plaintiffs lack substantial justification for their failure and the failure is not

18   harmless, Defendants assert these documents should be excluded.  *Id.*

19           In response, Plaintiffs contend the letters should not be stricken for the

20   following three reasons: (1) Plaintiffs offer the evidence "solely for impeachment

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 16

purposes," which is a valid exception to disclosure under Rule 26(a); (2) the letters, self-reportedly prepared in anticipation of litigation or trial, are attorney work product and thus not discoverable; and (3) the letters are going to be used to refresh the recollection of undisclosed witnesses. ECF No. 81.

Under the Federal Rules of Civil Procedure, a party has a duty to cooperate and comply with the discovery process. Rule 26(a)(1) requires the parties to, "without awaiting a discovery request," provide "a copy . . . of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Rule 26(e) sets forth a continuing duty of the party to supplement or correct its disclosures or responses. *Id.* at 26(e)(1). The scope of discoverable information includes any "nonprivileged matter that is relevant to any party's claim or defense." *Id.* at 26(b)(1). Privileged information, such as documents subject to the work product doctrine, is not discoverable. *Id.* at 26(b)(3); *In re Grand Jury Subpoena (Mark Torf/Torf Envtl. Mgmt.)*, 357 F.3d 900, 907 (9th Cir. 2004) ("We have previously held that to qualify for protection against discovery under [Rule 26(b)(3)], documents must have two characteristics: (1) they must be prepared in anticipation of litigation or for trial, and (2) they must be prepared 'by or for another party or by or for that other party's representative." (internal quotation marks omitted))

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 17

1  "If a party fails to provide information or identify a witness as required by

2  Rule 26(a) or (e), the party is not allowed to use that information or witness to

3  supply evidence on a motion, at a hearing, or at a trial, unless the failure was

4  substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1); *see R& R Sails,*

5  *Inc. v Ins. Co. of Penn*., 673 F.3d 1240, 1247 (9th Cir. 2012) ("We recognize that,

6  in the ordinary case, violations of Rule 26 may warrant evidence preclusion.").

7  "The party facing sanctions bears the burden of proving that its failure to disclose

8  the required information was substantially justified or is harmless."  *Id.* at 1246.

9  The Ninth Circuit gives "particularly wide latitude" to the district's court decision

10  to impose sanctions under Rule 37(c)(1).  *Id.* at 1245.

11      This Court finds Plaintiffs are not allowed to use these letters to supply

12  evidence in response to Defendants' motion or at trial because they were not timely

13  disclosed and Plaintiffs have failed to show that this failure was substantially

14  justified and is harmless.

15      First, these documents should have been disclosed under Rule 26 as they are

16  relevant to Plaintiffs' fraud and promissory estoppel claims and thus are not solely

17  being used for impeachment purposes.  In opposition to Defendants' motion for

18  summary judgment, Plaintiffs cite to the five letters as confirmation of the alleged

19  novated agreement.  ECF No. 59 at 4.  Assuming these letters were drafted when

20  indicated, they were in Plaintiffs' "possession, custody, or control" and should

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 18

have been produced in initial disclosures.  *See* Fed. R. Civ. P. 26(a)(1).  Plaintiffs

not only failed to include these letters in initial disclosures but failed to produce the

letters in response to Defendants' discovery requests.  Defendants specifically

requested all documents supporting Plaintiffs' claims or related to allegations

within the complaint and all documents related to or reflecting communications

between Mr. Algaier and BANA, which communications pertained to the loan,

property, or incidents described in the complaint.  ECF No. 65-1 at 20-24.

Second, these documents are not protected by the work product doctrine or

any other privilege.  Plaintiffs cannot legitimately assert that these documents were

sent to BANA in order to confirm the alleged fraudulent conversations described in

each letter and also simultaneously contend that these documents were confidential

work product prepared by them "in anticipation of trial."  *In re Grand Jury*

*Subpoena*, 357 F.3d at 907. Moreover, even if these letters are protected by the

work product doctrine, Plaintiffs have waived any privilege as they claim to have

sent these letters to BANA.  *See Transamerica Computer Co. v. Int'l Bus. Machs.*

*Corp.*, 573 F.2d 646, 651 (9th Cir. 1978) (recognizing that a privilege may be

waived by the voluntary production of otherwise privileged documents).  And

regarding Plaintiffs' contention that these documents are protected by the Federal

Rule of Evidence allowing a party to use a document to refresh a witness'

recollection, this Rule does not protect against otherwise discoverable information.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 19

Plaintiffs have failed to meet their burden to demonstrate why the

nondisclosure should be excused.  *See R& R Sails*, 673 F.3d at 1246.  Their failure

to understand the rules of discovery does not provide substantial justification for

failure to disclose relevant information.  Moreover, this failure is not harmless:

discovery has now closed and trial is nearly one month away.  As such, Defendants

have lost the opportunity to investigate these documents, question Plaintiffs about

these letters in a deposition, or prepare an adequate defense.

Moreover, this Court finds these documents cannot be considered as

evidence because they contain inadmissible hearsay.  Hearsay—an out-of-court

statement offered to prove the truth of the matter asserted in the statement, Fed. R.

Evid. 801(c)—in the absence of a procedural rule or statute is inadmissible unless

it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls within a

hearsay exception under Rules 803, 804, or 807.  Fed. R. Evid. 802; *Orr v. Bank of

Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002).  These letters contain out-of-

court written statements made by Mr. Algaier and offered by Mr. Algaier and Ms.

Eddy to prove the truth of the matter asserted—that a BANA representative

guaranteed Plaintiffs' eligibility for a loan modification and instructed them to stop

making payments for 90 days.  Although Plaintiffs attempt to argue that these

letters are offered to show circumstantial evidence of spoliation—that is, to offer

proof that they sent these letters and BANA destroyed them—their use of these

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 20

letters in their briefing to show that a BANA representative made the alleged promise or representation suggests otherwise.  Thus, because these letters contain hearsay and no exception applies, they cannot be offered to create a genuine issue of material fact.[13]

Plaintiffs' briefing in response to Defendants' motion to strike requests that the Court impose sanctions in the amount of $5,000 against defense counsel and his firm for bringing a "wasting and costly unnecessary motion."  ECF No. 81 at 6. Filing a successful motion to strike is not sanctionable conduct.  See *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1415 (9th Cir. 1990) ("A filing is frivolous [for purposes of Fed. R. Civ. P. 11] if no competent attorney would believe it was well-grounded in fact and warranted by law.") (internal citation omitted).  Accordingly, Plaintiffs' request for sanctions is denied.

Accordingly, Defendants' motion to strike Plaintiffs' Exhibits 1 through 5 is **GRANTED**; these exhibits will not be considered as evidence to support Plaintiffs' claims.

//

//

_____

[13] Plaintiffs would not be prevented from using these letters to refresh their recollection.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 21

**B. Motion for Summary Judgment**

Defendants move for summary judgment on Plaintiffs' three remaining claims for fraud, promissory estoppel, and breach of contract.

Summary judgment may be granted to a moving party who demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier-of-fact] could reasonably find for the plaintiff." *Id.* at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. A dispute concerning any such fact is "genuine" only where the evidence is such that the trier-of-fact could find in favor of the non-moving party. *Id.* "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation marks omitted); *see also Hexcel*

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 22

*Corp.*, 681 F.3d at 1063 ("To put at issue a defendant's evidence . . ., the plaintiff must produce at least some significant, probative evidence tending to support the complaint, to create a genuine issue of material fact.") (internal quotation marks omitted). Moreover, "[c]onclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *see also Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.").

In ruling upon a summary judgment motion, a court must construe the facts, as well as all rational inferences therefrom, in the light most favorable to the non-moving party, *Scott v. Harris*, 550 U.S. 372, 378 (2007), and only evidence which would be admissible at trial may be considered, *Orr*, 285 F.3d at 773.

///

///

///

///

///

///

///

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 23

**1. Breach of Contract**[14]

First, Defendants move for summary judgment on Plaintiffs' breach of contract claim. In support, Defendants asserts that MERS should be dismissed because the claim is expressly directed against BANA and CMG alone. ECF No. 51 at 5. Defendants assert that BANA is entitled to summary judgment because (1) it had no involvement with the origination of the Loan and no legal relationship with CMG, the original Lender, who was named in this action but never served, *id.* at 9-10; and (2) there is nothing in the record that shows Plaintiffs were entitled to a credit at closing or that BANA failed to keep an accurate accounting, *id.* at 10.

Plaintiffs' First Amended Complaint asserts that, according to the closing document on their loan, "there was to be paid back to plaintiff the sum of $14,987 in credits at closing based on calculated over charges that CMG was to repay." ECF No. 20 at 3. Because Plaintiffs never received this credit, they allege Defendants breached the terms of the original Note and DOT. *Id.* at 3-4. Plaintiffs also assert that Defendants breached the terms of the original Note and DOT by

---

[14] This Court previously dismissed Plaintiffs' breach of contract claim as it relates to the purported novated agreement. ECF No. 26 at 17 ("Plaintiffs' amended complaint, like the original complaint, fails to state a cause of action for breach of contract (the novated agreement) that survives the statute of frauds.").

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 24

failing to properly apply payments to Plaintiffs' loan account. *Id.* at 12 ("The terms of the note required payments made by Plaintiff to be applied properly to the note. Any variance from the Note's terms and conditions and those implied conditions as imposed by the laws of contracts of this state constitute a material breach of the contract . . . .").

Plaintiffs' response briefing merely cites to Mr. Algaier's declaration and the allegations in the Amended Complaint in support of their breach of contract claim. ECF Nos. 58 at 17-18; 59 at 5. However, neither the declaration nor the complaint highlight where in the record it shows Plaintiffs were entitled to a $14,987 credit at closing or where in the record it shows BANA failed to properly apply payments to Plaintiffs' loan account.

The elements of breach of contract are as follows: (1) existence of a valid contract between the parties; (2) breach by the defendant; and (3) damages. *Lehrer v. State*, 101 Wash. App. 509, 516 (2000). The burden is on the plaintiff to prove these elements. *Id.*

First regarding the credits due, this Court finds no evidence to support Plaintiffs' allegations of a breach. *See Hexcel Corp.*, 681 F.3d at 1063. As an initial matter, it is unclear how BANA, rather than CMG, is responsible for the failure to pay any alleged credits to Plaintiffs at or after the closing. Further, the HUD-1 Settlement Statement and Addendum, which Plaintiffs received and signed

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 25

1    at closing, make no mention of any credit due Plaintiffs at closing, ECF No. 52-1

2    at 25-28, and Plaintiffs have failed to present any evidence in support of their

3    allegation.  Tellingly, when asked in his deposition to identify what credits he was

4    referring in his First Amended Complaint, Mr. Algaier merely directed defense

5    counsel to the pleading.  ECF No. 53-1 at 19-20.

6         Second, regarding the alleged inaccurate accounting, this Court similarly

7    finds no evidence to support Plaintiffs' allegations of a breach.  As an initial issue,

8    Plaintiffs fail to allege in their First Amended Complaint which payments were not

9    properly credited.  To the extent Plaintiffs are arguing that BANA impermissibly

10   back-credited the account when it applied Plaintiffs' November and December

11   2011 payments to the September and October 2011 missed payments, Plaintiffs

12   have failed to show how this practice was inconsistent with the method of

13   application in the loan documents.  According to BANA representative Ms.

14   Davidson, Plaintiffs' November and December 2011 payments, "in accordance

15   with the terms of the DOT and Note," were credited as the missed September and

16   October 2011 payments.  ECF No. 52 at 5.  Indeed, the DOT expressly lists the

17   order in which payments would be applied, and the Note references the security

18   instrument when discussing the order of payment.  *See* ECF Nos. 52-1 at 2, 13.

19        Accordingly, because this Court—even when viewing the evidence in the

20   light most favorable to Plaintiffs—finds no reasonable jury could find in favor of

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 26

1    Plaintiffs on their breach of contract claim, summary judgment in favor of

2    Defendants is warranted.

3         **2. Promissory Estoppel**[15]

4         Defendants next move for summary judgment on Plaintiffs' claim for

5    promissory estoppel.  ECF No. 51 at 11-16.  In support, Defendants asserts that

6    MERS should be dismissed because the claim is expressly directed against BANA

7    and CMG alone.  *Id.* at 5.  In support of granting summary judgment in favor of

8    BANA, Defendants contend (1) there is no evidence that BANA orally modified

9    the Loan; rather, the evidence shows that Mr. Algaier applied for and obtained a

10   Special Forbearance Agreement, which afforded Mr. Algaier the opportunity to

11   make higher monthly payments and cure his default, *id.* at 12-13; (2) Plaintiffs did

12   not change their position in light of the alleged promise, *id.* at 13-15; (3) Plaintiffs

13

14   [15] Plaintiffs' First Amended Complaint labels this cause of action as "Restitution

15   for Unjust Enrichment and Promissory Estoppel."  ECF No. 20 at 13.  In its Order

16   of January 15, 2014, this Court dismissed the quasi contract portion of this claim.

17   ECF No. 15 at 23- 24 ("[B]ecause Plaintiffs entered an express contract with

18   Defendant BANA with respect to their loan agreement and allege that they had

19   modified that agreement via a verbal agreement with a loan agent, Plaintiffs' quasi

20   contract claim fails.").

1    cannot prove that they justifiably relied upon any alleged oral promise by BANA

2    to modify the Loan, *id.* at 15-16.

3           Plaintiffs' promissory estoppel claim appears to be based on the alleged

4    promise by a BANA representative to modify the Loan.  ECF No. 20 at 13.

5    According to Plaintiffs, a BANA representative informed Plaintiffs that they would

6    be eligible for reduced monthly payments under a modified loan agreement so long

7    as they stopped making payments for three months.  *Id.* at 5.  Besides Mr.

8    Algaier's declaration, Plaintiffs offer no admissible evidence in support of these

9    allegations in response to Defendants' motion for summary judgment.  ECF Nos.

10   58 at 17-18; 59 at 5-6.

11          A party seeking recovery under a theory of promissory estoppel must prove

12   five prerequisites: (1) a promise that (2) the promisor should reasonably expect to

13   cause the promisee to change his position and (3) that does cause the promisee to

14   change his position (4) justifiably relying upon the promise, in such a manner that

15   (5) injustice can be avoided only by enforcement of the promise.  *Havens v. C & D*

16   *Plastics, Inc.*, 124 Wash.2d 158, 171-72 (1994); *Kim v. Dean*, 133 Wash. App.

17   338, 348 (2006).

18           In *Greaves v. Medical Imaging Systems, Inc.*, the Washington Supreme

19   Court refused to adopt Restatement section 139, which allows promises to be

20   enforceable "notwithstanding the statute of frauds." *Greaves v. Med. Imaging Sys.,*

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 28

*Inc.*, 124 Wash.2d 389, 397-401 (1994) (holding appellate court erred when it reversed district court decision, which decision found an oral employment contract void under the statute of frauds because it did not satisfy the writing requirement). Although the *Greaves* Court declined to waive the writing requirement based on the specific facts presented, *see Keenan v. Allan*, 91 F.3d 1275, 1279 n.6 (9th Cir. 1996), it noted that it is inequitable to apply the statute of frauds under some circumstances, *Greaves*, 124 Wash.2d at 396.

This Court finds no reasonable jury, viewing the evidence in the light most favorable to Plaintiffs, could find for Plaintiffs on their promissory estoppel claim.

First, even assuming that an oral contract was made, it is unenforceable under the statute of frauds. *See id.* at 397-401. Although there are some circumstances in which an agreement should be enforced notwithstanding the statute of frauds, an agreement to modify a written loan agreement is not such a scenario. Washington's statute of frauds requires that an agreement, "not to be performed in one year from the making thereof," is void unless in writing and signed by the party to be charged. RCW § 19.36.010. Because the purported promise to modify the original loan agreement could not be performed within one year, the promise is within the statute of frauds and must be in writing in order to be enforceable.

///

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 29

1      Second, even if this Court were to enforce the alleged promise

2  notwithstanding the statute of frauds, Plaintiffs have failed to produce "some

3  significant, probative evidence tending to support the complaint, to create a

4  genuine issue of material fact," *see Hexcel Corp.*, 681 F.3d at 1063 (quotations

5  omitted); rather, they rely on mere allegation and speculation in support of their

6  allegations of a promise.  Although the parties dispute the substance of the

7  conversation that took place on December 5, 2011, between Plaintiffs and a BANA

8  representative, the admissible evidence demonstrates that following this

9  conversation Mr. Algaier was considered for eligibility for payment assistance

10  under FHA programs and offered and entered into a Special Forbearance

11  Agreement, which required Mr. Algaier to make temporary, higher payments in

12  order to cure his default.  Indeed, according to Ms. Davidson, Mr. Algaier's

13  responses on the FHA programs application form—which demonstrated that Mr.

14  Algaier's income outweighed his expenses and any hardship was short-term—

15  indicated that he was not eligible for a reduced-payment loan modification.

16  Besides Mr. Algaier's self-serving declaration and the allegations within the

17  Amended Complaint, nothing in the record supports that alleged promise that

18  Plaintiffs were granted a loan modification.

19      Third, even assuming Plaintiffs were able to offer definitive proof that the

20  promise was made, Plaintiffs have not shown that they relied to their detriment on

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 30

1   any promise made by Defendants.  Although Plaintiffs allege that they stopped

2   making payments for ninety days following the December 2011 conversation in

3   order to qualify for the loan modification, they had already failed to pay two

4   monthly payments and were in default.   ECF No. 52-1 at 55.  Moreover, Plaintiffs

5   failed to tender any payments toward the alleged novated agreement after the

6   ninety day period had passed.  ECF Nos. 52-1 at 55-58; 53-1 at 25.  Rather than

7   taking some action in reliance on the promise of the novated agreement, Plaintiffs

8   remained on the same course of non-payment.  *See Evans v. Bank of New York*

9   *Mellon*, No. 11-CV-0210-LRS, 2011 WL 4007386, at *4 (E.D. Wash. Sept. 8,

10  2011) ("Reliance on the promise would have required Mr. Evans to take some

11  action by making payments in what he believed was the agreed to amount; instead,

12  he just continued in his accustomed course of making no payments whatsoever on

13  the debt he had incurred").

14      Finally, Plaintiffs cannot show that they justifiably relied on this promise.

15  Considering Plaintiffs' original loan arrangement can be found in a writing

16  executed by the interested parties, Plaintiffs cannot have reasonably relied on an

17  oral agreement that purportedly modified these written documents. Given the

18  heavy paper trail evidencing the Note, DOT, and Special Forbearance Agreement,

19  a reasonable person would not rely on the enforceability of an oral agreement

20  modifying any long-term loan arrangement.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 31

1    Accordingly, because this Court finds no reasonable jury could find in favor

2    of Plaintiffs on their promissory estoppel claim, summary judgment in favor of

3    Defendants is warranted.

4    **3. Fraud**

5    Finally, Defendants move for summary judgment on Plaintiffs' fraud claim.

6    In support, Defendants asserts that MERS should be dismissed because, although

7    the First Amended Complaint does not identify against which parties the claim is

8    directed, the allegations therein relate solely to alleged conduct of BANA.  ECF

9    No. 51 at 5.  In support of granting summary judgment in favor of BANA,

10    Defendants contend Plaintiffs have failed to provide any admissible evidence to

11    demonstrate a false misrepresentation nor reliance thereon.  *Id.* at 16-20.

12    Plaintiffs' fraud claim is based on the December 5, 2011, conversation

13    between Plaintiffs and BANA wherein a BANA representative purportedly told

14    Plaintiffs that if they stopped making payments under the Note for three months

15    following the December 2011 payment, they would be "guaranteed" a loan

16    modification.  ECF No. 20 at 5-6, 9-10.  Besides Mr. Algaier's declaration,

17    Plaintiffs offer no admissible evidence in support of these allegations in response

18    to Defendants' motion for summary judgment.  ECF Nos. 58 at 17-18; 59 at 3-4.

19    In order to prove fraud, a plaintiff must establish each of the following nine

20    elements by clear, cogent, and convincing evidence:

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 32

> (1) a representation of an existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation; (8) his right to rely upon it, and (9) consequent damage.

*Elcon Const., Inc. v. E. Wash. Univ.*, 174 Wash.2d 157, 166 (2012); *Kirkham v. Smith*, 106 Wash.App. 177, 183 (2001). "The rule is that such reliance must be reasonable under the circumstances[;] that is, a party may not be heard to say that he relied upon a representation when he had no right to do so." *Williams v. Joslin*, 65 Wash.2d 696 (1965).

This Court finds, viewing the evidence in a light most favorable to Plaintiffs, that no reasonable jury could find clear, cogent, and convincing evidence of fraud.

First, Plaintiffs have failed to show by clear, cogent, and convincing evidence that there actually was a misrepresentation; rather, they rely on mere allegations within their First Amended Complaint and Mr. Algaier's self-serving declaration in support. *See Soremkun*, 509 F.3d at 984. As detailed above, the evidence demonstrates that Mr. Algaier was not offered a loan modification—and moreover was not even eligible for a loan modification—but instead offered and entered into a Special Forbearance Agreement, which required him to make temporary, higher payments in order to cure his default. Besides Mr. Algaier's self-serving declaration and the allegations within the Amended Complaint,

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 33

nothing in the record supports the alleged misrepresentation that Plaintiffs were granted a loan modification occurred.

Second, Plaintiffs have failed to show by clear, cogent, and convincing evidence that they actually relied upon the alleged misrepresentation. Although Plaintiffs allege that they stopped making payments for ninety days in reliance on the alleged misrepresentation, by the time the misrepresentation occurred they had already failed to pay two monthly payments and were in default. ECF No. 52-1 at 55. Moreover, Plaintiffs failed to tender any payments toward the alleged novated agreement after the ninety day period had passed; thus it is unclear how they have demonstrated reliance. ECF Nos. 52-1 at 25; 53-1 at 25.

Finally, Plaintiffs have failed to show by clear, cogent, and convincing evidence that they had a right to rely upon the alleged misrepresentation. As stated above, given the extensive paper trail surrounding Plaintiffs' original loan arrangement, Plaintiffs cannot have reasonably relied on an alleged oral representation modifying their loan. Given the heavy paper trail evidencing the Note, DOT, and Special Forbearance Agreement, a reasonable person would not rely on the enforceability of an oral agreement modifying any long-term loan arrangement.

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 34

1    Accordingly, because this Court finds no reasonable jury could find in favor

2    of Plaintiffs on their fraud claim, summary judgment in favor of Defendants is

3    warranted.

4    **ACCORDINGLY, IT IS ORDERED:**

5    1. Defendants' Motion for Summary Judgment (ECF No. 51) is

6    **GRANTED**.

7    2. Plaintiffs' Motion to Strike (ECF No. 58) is **DENIED**.

8    3. Defendants' Motion to Strike (ECF No. 64) is **GRANTED**.  Defendant's

9    Motion to Expedite (ECF No. 66) is **GRANTED**.

10   4. All other motions are **DENIED** as moot and the pretrial conference and

11   jury trial are **VACATED**.

12   The District Court Executive is directed to enter this Order, provide copies

13   to the parties, enter **JUDGMENT** for Defendants, and **CLOSE** the file.

14   **DATED** October 13, 2015.

15

16                              THOMAS O. RICE
                             United States District Judge
17

18

19

20

ORDER RE: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 35